IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUSTAVO DIAZ, JOSEPH SANTOS, CHRISTIAN A. GIBSON, GERALD SINCLAIR, MARVIN LEON VEAL, AND DOMENICK SCORZIELLO, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>FCA US LLC,<br><br>       Defendant, | C.A. No. 21-0906-EJW |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF RENEWED MOTION TO CERTIFY AN APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

*Of Counsel:*

Russell D. Paul (Bar No. 4647)
**BERGER MONTAGUE PC**
800 N. West Street
Suite 200
Wilmington, DE 19801
302-691-9545
rpaul@bm.net

Kelly A. Green (No. 4095)
Jason Z. Miller (No. 6310)
**SMITH KATZENSTEIN & JENKINS LLP**
1000 N. West Street, Suite 1501
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Tel.: (302) 652.8400
KAG@skjlaw.com
JZM@skjlaw.com

Dated: July 9, 2025

Additional Counsel for Plaintiffs on Signature Page

**TABLE OF CONTENTS**

Introduction ........................................................................................................................... 1

Argument .............................................................................................................................. 2

I. Plaintiffs Have Presented Two Controlling Questions of Law for Certification. ...................... 2

    A. FCA Ignores the Broad Scope of the First Factor under Section 1292(b) and Third Circuit Precedent, Which Allows Certification of Any Issue Whose Resolution "Would Result in Reversal of the Judgment" or Is "Serious to the Conduct of the Litigation." ........................................................................................................... 2

    B. FCA's Cited Appellate Authority Does Not Support Its Position. ..................................... 3

    C. FCA's District Court Authority Does Not Support Its Position. ........................................ 6

II. Defendant Fails to Rebut Plaintiffs' Showing that a Potential Difference in Opinion Justifies Review; in Fact, Defendant Fails to Cite the Relevant Record or Analyze any Relevant Case Law at All. ............................................................................................... 8

III. Defendant's Assertion that Appeal Will Not Speed Resolution of This Case Requires Fanciful Inferences. ............................................................................................................11

Conclusion ........................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                               **Page(s)**

*Ahrenholz v. Bd. of Trs. of Univ. of Illinois*,
  219 F.3d 674 (7th Cir. 2000) .................................................................................................. 4, 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................... 7

*Axcess Int'l., Inc. v. Genetec (USA) Inc.*,
  375 F. Supp. 3d 533 (D. Del. 2019) ........................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007) ................................................................................................................ 6, 7

*Clark-Dietz & Assocs.-Eng'rs Inc., v. Basic Const.Co.*,
  702 F.2d 67 (5th Cir. 1983) ..................................................................................................... 5, 6

*Francis v. Gen. Motors, LLC*,
  504 F. Supp. 3d 659 (E.D. Mich. 2020) ................................................................................ 9, 10

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
  22 F.4th 1125 (9th Cir. 2022) ..................................................................................................... 5

*In re Cognizant Tech. Sols. Corp. Sec. Litig.* ,
  2021 WL 1016111 (D.N.J. Mar. 17, 2021) ................................................................................ 3

*In re Schering-Plough Corp.*,
  2010 WL 2546054 (D.N.J. June 21, 2010) ............................................................................. 6, 7

*Int'l Constr. Prod., LLC v. Caterpillar, Inc.*,
  2023 WL 2968111 (D. Del. Apr. 17, 2023) ............................................................................ 6, 7

*Kapossy v. McGraw-Hill, Inc.*,
  942 F. Supp. 996 (D.N.J. 1996) ................................................................................................. 2

*Katz v. Carte Blanche Corp.*,
  496 F.2d 747 (3d Cir. 1974) ................................................................................................... 1, 3

*Martin v. Altisource Residential Corp.*,
  2019 WL 3945249 (D.V.I. Aug. 21, 2019) ........................................................................ 6, 7, 8

*Morgan v. Ford Motor Co.*,
  2007 WL 269806 (D.N.J. Jan. 25, 2007) .................................................................................... 2

*Nice v. L-3 Commc'ns VertexAerospace LLC*,
  885 F.3d 1308 (11th Cir. 2018) .................................................................................................. 4

*Nw. Ohio Adm'rs Inc., v. Walcher & Fox Inc.*,
  270 F.3d 1018 (6th Cir. 2001) .................................................................................... 5, 6

*Petro v. FCA US LLC*,
  2024 WL 3848433 (D. Del. Aug. 16, 2024) ..................................................................... 9

*Pistorio v. FCA US LLC*,
  2022 WL 141524 (E.D. Mich. Jan 14. 2022) .............................................................. 9, 10

*Sterk v. Redbox Automated Retail, LLC*,
  672 F.3d 535 (7th Cir. 2012) ..................................................................................... 2, 11

*Talley v. Gen. Motors, LLC*,
  2021 WL 7209448 (D. Del. Nov. 26, 2021) ............................................................... 9, 10

*Resol. Tr. Corp. v. Cityfed Fin. Corp.*,
  57 F.3d 1231 (3d Cir. 1995) ........................................................................................ 3, 4

## Rules

Fed. R. Civ. P. 9(b) .............................................................................................................. 6

Fed. R. Civ. P. 23(g)(3) ....................................................................................................... 1

## Other Authorities

Charles Alan Wright & Arthur R. Miller, <u>Fed. Prac. & Proc.</u> (3d ed. 2025) ......................... 3, 6, 12

## INTRODUCTION

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." FED. R. CIV. P. 23(g)(3). Similarly, the Manual for Complex Litigation (Fourth 2007) ("Manual") recommends that early in complex litigation the court select and authorize one or more attorneys to act on behalf of other counsel and their clients. Counsel so designated "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties' counsel. *Manual* § 10.22.

Defendant's arguments against certification – under all three Section 1292(b) factors – relies on a flawed analysis and fails to rebut Plaintiffs' position. *See generally* D.I. 111. First, Defendant simply ignores the Third Circuit standard for defining the "controlling question of law": whether resolution of an issue "would result in a reversal of a judgment after final hearing . . . [or if it is] serious to the conduct of the litigation, either practically or legally." *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 755 (3d Cir. 1974). *Compare* D.I. 111 at 8–9, *with* D.I. 110 at 10–11. Under the correct reading, Plaintiffs readily meet this definition because a reversal of the Order would allow Plaintiffs to proceed on their fraud-based claims.

Second, Defendant fails to cite any portion of the record (other than this Court's prior order) or analyze a single case that it cites to support its position that there is not a difference of opinion between this Court and other courts regarding the pleading of fraudulent omissions in automotive defect cases. *See* D.I. 111 at 11–14. Instead, Defendant argues the cases Plaintiffs identified include facts that are "entirely different"; thus, there is no room for disagreement between this Court and those cases. D.I. 111 at 11–14. However, again, Defendant's assertion is incorrect, and it offers no analysis of the pleadings or conclusions in those cases.

Finally, Defendant's approach to the third factor, whether interlocutory review will speed resolution of this case, improperly assumes interlocutory review will not speed resolution because Defendant will prevail on appeal, though Defendant, obviously, cannot predict the outcome of the appeal. D.I. 111 at 14–15. Furthermore, as repeatedly noted, the primary drivers

1

of value in this case are the unresolved fraud claims, and it is unlikely that this case would resolve vis-à-vis a settlement while the status of the fraud claims are unresolved. *E.g.*, D.I. 110 at 17–19; *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) (granting 1292(b) review to promote class action settlement by examining viability of the primary claims). Moreover, should the Court of Appeals reverse the decision here post judgment, discovery would need to be re-opened and a new trial would, ultimately, need to be held.

## ARGUMENT

### I.   PLAINTIFFS HAVE PRESENTED TWO CONTROLLING QUESTIONS OF LAW FOR CERTIFICATION.

With regard to the first 1292(b) factor – whether there is a "controlling question of law" suitable for certification, Defendant's primary argument – that no controlling issue of law was put at issue by the Court's ruling – omits portions of Plaintiffs' briefing and the complete record. *See* D.I. 111 at 8–9 (addressing only a subset of arguments raised by Plaintiffs and failing to offer citation to either the brief, this Court's Order, or any other portion of the record). For the reasons discussed below, it is also flatly wrong, even if this Court chose to engage in the solipsistic analysis Defendant requests.

#### A.   FCA Ignores the Broad Scope of the First Factor under Section 1292(b) and Third Circuit Precedent, Which Allows Certification of Any Issue Whose Resolution "Would Result in Reversal of the Judgment" or Is "Serious to the Conduct of the Litigation."

As a threshold matter, contrary to FCA's assertions, a would-be-appellant's ability to satisfy the first factor, the existence of a "controlling question of law" under Section 1292(b) in the Third Circuit, is broad. As the Third Circuit has explained, this factor is satisfied if resolution of the issue "would result in a reversal of a judgment after final hearing . . . [or if it is] serious to the conduct of the litigation, either practically or legally." *Katz*, 496 F.2d at, 755; *Morgan v. Ford Motor Co.*, 2007 WL 269806, at *2 (D.N.J. Jan. 25, 2007) (same); *see Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1002 (D.N.J. 1996) (noting that the rule is designed to prevent review where a court has exercised discretion in fact-based review). Because a 12(b)(6) ruling is made purely on the

law, assuming all plausible facts in the complaint are true (without discretion to decide their truth), these issues are quintessentially certifiable under 1292(b). *See* Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3931 (3d ed. 2025).

The recent case *In re Cognizant Tech. Sols. Corp. Sec. Litig.* ("*CTS*") directly reaffirms the binding nature of the *Katz* decision as the primary authority on the issue, including with regard to an order entered under Rule 12(b)(6). 2021 WL 1016111, at *2–3 (D.N.J. Mar. 17, 2021). In *CTS*, there was a change of judge during the proceedings, and while the first judge had granted the defendant's motion to dismiss, the new judge reversed course and denied the motion, then invited briefing on an interlocutory appeal under Section 1292(b). *Id.* at * 2–3. The defendant submitted a motion arguing for interlocutory review, but the district court denied the motion because there was no "controlling question of law" at issue. *Id.* at * 2–3 (quoting *Katz*). As the district court judge explained, while the defendant argued that a different pleading standard should apply, the court had already ruled that the result in this case would be the same regardless of the pleading standard, and the defendant did not seek to challenge that determination. *Id.* Thus, even if the Court of Appeals reversed the decision on the pleading standard as the defendant requested, there would be no possible change in the judgment, and thus no controlling question of law at issue. *Id.* Here, unlike the defendant in *CTS*, Plaintiffs, pursuant to *Katz*, explain that if the Court of Appeals reverses this Court's 12(b)(6) decision, it will open a path for liability on the fraud claims at issue and thus could change the judgement in this case, exactly what *Katz* found was required. *See generally* D.I. 110.

### B. FCA's Cited Appellate Authority Does Not Support Its Position.

In contrast to the *Katz* case and the above authority, the only Third Circuit case Defendant cites, *Resol. Tr. Corp. v. Cityfed Fin. Corp.*, was vacated by the United States Supreme Court. 57 F.3d 1231, 1236 (3d Cir. 1995) ("*RTC*"), *vacated sub nom. Atherton v. F.D.I.C.*, 519 U.S. 213 (1997). Regardless, even if the *RTC* case were not vacated by the Supreme Court, that case (like essentially all the authority cited by Defendant) actually supports Plaintiffs' position, here.

3

In *RTC*, the Third Circuit accepted interlocutory review but then exercised discretion and chose not to decide it because the issue was not "ripe for decision." *RTC*, 57 F.3d at 1236 fn. 6. Critically, the Third Circuit determined that its ruling on the issue would change based on further factual development: "Given the fact-intensive nature of the law in this area, we conclude that the preferable course is to permit the district court's order denying the United Savings defendants' motion for summary judgment to stand so that greater factual development can occur." *RTC*, 57 F.3d at 1236 n. 6. There is simply no way that a case decided on discretionary ripeness grounds which was vacated by the United States Supreme Court provides the controlling authority Defendant asserts here. Moreover, Defendant offers no explanation regarding how the continued litigation of this case will offer further factual development of Plaintiffs' fraudulent omissions claims, particularly when discovery on those claims has been stifled. Here, the issues raised readily satisfy the first Section 1292(b) factor, since the Court's decision on this issue resulted in the determination that Plaintiffs did not state viable fraudulent omissions claims as a matter of law. D.I. 64 at 21.

Defendant's non-Third Circuit (or persuasive) appellate caselaw fares no better. *Nice v. L-3 Commc'ns Vertex Aerospace LLC*, was a brief per curiam decision involving a fighter jet crash in Georgia and the political question doctrine. 885 F.3d 1308, 1310 (11th Cir. 2018). The district court there refused to grant the Defendant's motion to dismiss which argued that the Navy's decisions leading up to the crash were nonjusticiable under the political question doctrine. *Nice*, 885 F.3d at 1310. The defense had sought interlocutory review under Section 1292(b) and the Eleventh Circuit granted review; however, the court ultimately sent the case back down because the issue of causation should be factually resolved before the political question doctrine issue would be ripe for review. *Id.* at 1312–13. A per curiam political question doctrine case where Section 1292(b) review was granted (before the case was ultimately remanded on ripeness grounds), does nothing to undermine the settled Third Circuit authority cited by Plaintiffs.

Finally, Defendant cites to a free speech case, *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, decided on summary judgment. 219 F.3d 674, 675 (7th Cir. 2000). There, the Seventh Circuit

4

proclaimed that generally summary judgment was inappropriate for Section 1292(b) review because it involved a close review of a disputed record: "to decide whether summary judgment was properly granted requires hunting through the record compiled in the summary judgment proceeding to see whether there may be a genuine issue of material fact lurking there[.]" *Ahrenholz*, 219 F.3d at, 677. However, the Seventh Circuit emphasized that there would always be exceptions, such as where "resolution [] could (because it was indeed a *controlling* issue) head off protracted, costly litigation." *Id.* Here, Plaintiffs do not request review of a fact-based summary judgment decision and instead request interlocutory review of purely legal questions resolution of which, as described further below, will likely speed this case to settlement and obviate the need of trial.

Plainly, controlling case law and the above cited cases are inconsistent with FCA's proposition – that an issue decided on a 12(b)(6) motion cannot be certified because it is not an issue of law. To be clear, Plaintiffs are aware of several published circuit opinions that advocate a rule similar to the one proposed by FCA – that fact issues are inappropriate for certification – but none of them preclude review of a 12(b)(6) determination where pleadings are assessed for sufficiency as a matter of law rather than a review of disputed facts. *E.g.*, *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125 (9th Cir. 2022); *Nw. Ohio Adm'rs Inc., v. Walcher & Fox Inc.*, 270 F.3d 1018, 1023 (6th Cir. 2001); *Clark-Dietz & Assocs.-Eng'rs Inc., v. Basic Const. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). Indeed, none of these cases held that a ruling on a 12(b)(6) motion is inappropriate for review – and, in fact, held or applied reasoning that would result in the opposite conclusion.

The Ninth Circuit in 2022 in *ICTSI Oregon*—the most recent Circuit to address FCA's position—ruled that it could not take an interlocutory appeal of factual matters that had been raised following a ten-day jury trial. *ICTSI Oregon*, 22 F.4th at 1129. That court failed to reach the holding that FCA wrongly asserts the law reflects – that issues regarding pleadings sufficiency cannot be certified. The Sixth Circuit decision in *Northwestern Ohio* is even less favorable for FCA. While that case did hold that a 1292(b) petition should not be accepted to review factual matters, the

5

Court of Appeals **accepted** the interlocutory appeal there because the issues were raised pursuant to a Rule 12(b)(6) motion. *Nw. Ohio Adm'rs Inc.*, 270 F.3d at 1023, 25–26.

Finally, in *Clark-Dietz*, the Fifth Circuit found that an issue was improperly certified because it addressed factual issues following the first phase of a bifurcated trial. *Clark-Dietz & Assocs.-Engineers, Inc.*, 702 F.2d at 68–69 ("As they are posed, none of the questions is particularly difficult and most appear to be merely fact-review questions inappropriate for § 1292(b) review."). Thus, *Clark-Dietz* followed the same reasoning as *ICTSI Oregon* and *Northwestern Ohio*. While a 1292(b) petition cannot be used to review a factual adjudication, a ruling on a 12(b)(6) motion does not involve the resolution of disputed facts. *See* Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3931 (3d ed. 2025).

### C. FCA's District Court Authority Does Not Support Its Position.

In addition to its inapposite appellate authority, Defendant cites a series of unpublished district court opinions that stand for the proposition that, when a question is sufficiently factually complicated, 1292(b) certification is not appropriate. *Int'l Constr. Prod., LLC v. Caterpillar, Inc.*, 2023 WL 2968111 (D. Del. Apr. 17, 2023*)*; *In re Schering-Plough Corp.*, 2010 WL 2546054 (D.N.J. June 21, 2010); *Martin v. Altisource Residential Corp.*, 2019 WL 3945249 (D.V.I. Aug. 21, 2019).

FCA's position is without merit because, here, this issue was decided on a 12(b)(6) motion, *where all facts are assumed to be true*. *Axcess Int'l, Inc. v. Genetec (USA) Inc.*, 375 F. Supp. 3d 533, 535 (D. Del. 2019) ("When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the complaint's factual allegations as true.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555–56 (2007)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The correct legal standard allows for no weighing of evidence or factual determinations to be made by the Court; instead, the analysis is simply whether the "factual content . . . allows the court to draw the reasonable inference that

6

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There is no complicated weighing of facts, as FCA asserts, which would defeat certification of the issues raised by Plaintiffs here.

Contrary to the above, FCA relies on unpublished and inapposite cases to incorrectly argue the sufficiency of the pleadings following a 12(b)(6) determination is inappropriate for certification.

*Caterpillar*, the first and most recent case cited by FCA, involved the review and weighing of extensive factual materials on summary judgment. *Caterpillar*, 2023 WL 2968111, at *1. As the trial court explained, the moving party there "does not cite any cases that are contrary to any of the cases I cited in my summary judgment opinion. Indeed, . . . it is clear that it does not disagree on the law. . . . It essentially wants a do over with the Court of Appeals on the application of established law to an extensive factual record." *Id.* This is completely opposite of what is being sought here, where Plaintiffs seek review of two issues which present pure questions of law – what the correct pleading standard is and whether Plaintiffs' pleading sufficiently meets that standard.

FCA's second case, *In re Schering-Plough Corp.*, notes that an issue of sufficiency of pleadings may be inappropriate for interlocutory certification, where it involves "a mixed question of law and fact" and where the moving party "fail[s] to demonstrate" that the issue for certification is sufficiently legal. *In re Schering-Plough Corp.*, 2010 WL 2546054, at *4. Here, however, Plaintiffs thoroughly address the purely legal nature of their claims (D.I. 110 at 11–17.) There is no question that, because the allegations in the pleadings are taken as true on a 12(b)(6) motion, if this case is certified, there are simply no factual determinations for the Court of Appeals to make. *Bell Atl. Corp.*, 550 U.S. at 555–56; *Ashcroft*, 556 U.S. at 678.

Similarly, the third unpublished case cited by FCA, *Martin*, involved the attempted certification of an issue that was more factual than legal. *Martin*, 2019 WL 3945249, at *2. ("Because the contested issues revolve more around this case's facts than about the appropriate legal standard, FCA has not demonstrated a substantial disagreement as to any 'question of law.'") Importantly, like *Caterpillar*, the moving party did not contest the appropriate legal standard, nor

7

did they argue that the Court failed to adequately "appl[y] the standards set forth in *[the leading case]* and other relevant Third Circuit precedent." *Id.* Here, by contrast, Plaintiffs seek review of two issues which present pure questions of law – what the correct pleading standard is and whether, when all facts are assumed to be true, the pleading sufficiently meets that standard.

Because Plaintiffs have raised controlling issues of law with regard to the Court's ruling on FCA's 12(b)(6) Motion, Plaintiffs have satisfied the first 1292(b) factor, and this case should be certified for interlocutory appeal.

II. **DEFENDANT FAILS TO REBUT PLAINTIFFS' SHOWING THAT A POTENTIAL DIFFERENCE IN OPINION JUSTIFIES REVIEW; IN FACT, DEFENDANT FAILS TO CITE THE RELEVANT RECORD OR ANALYZE ANY RELEVANT CASE LAW AT ALL.**

Defendant continues its Opposition to Plaintiffs' motion by stating that there are no grounds for a difference of opinion between this Court's Order and the courts cited by Plaintiffs. D.I. 111 at 10–14. Rather, as Defendant summarizes its position: "other courts, when presented with entirely different pleaded facts, made different findings." D.I. 111 at 14. (Of course, the opposite inference is at least equally possible, that because, as Defendant concedes, this Court reached an opposite holding from the holding in those cases, this Court erred.)

Here, the majority of Defendant's Opposition is completely divorced from the pleadings at issue in this case and is, instead, copy-and-pasted portions of this Court's Order granting the 12(b)(6) motion. *See* D.I. 111 at 10–14. Defendant's Opposition appears to have no relevant citations, analysis, or quotation of Plaintiffs' actual pleading that was at issue before the Court in making its ruling. *See* D.I. 111 at 10–14.[1]

Defendant's case citations similarly do not address the questions at issue or are exclusively focused on the issue of the sufficiency of the TSB reports attached to the FASC. D.I. 111 at 10–

---

[1] The Opposition does cite to the pleading at issue twice. Once for the proposition that the Court did not consider extrinsic evidence in reaching its ruling. DI 111 at 12 ("there is no extrinsic evidence at issue here. The only content the Court referred to is what Plaintiffs alleged in the FASC, incorporated into it, or attached to it. *See, e.g.*, D.I. 59"). And for the proposition that the TSB reports at issue here were "unrelated [to] Chrysler 200 and 300 vehicles". D.I. 111 at 13 (*see* citing D.I. 59, ¶¶ 284-288). Defendant never responds to, or addresses, any of the indicia of knowledge set forth in the pleadings that do not relate to the TSB reports. *See* D.I. 111 at 10–14.

14. As explained in the Renewed Motion, this is not a case exclusively about TSB reports, and Plaintiffs submitted over seventy paragraphs of allegations regarding Defendant's presale knowledge of the differential defect at issue, only some of which involved TSB reports. D.I. 59 at ¶¶ 26–38, 242–306. Although the TSB reports in the complaint are sufficient to plead pre-sale knowledge by themselves, they are not necessary. And, Defendant's Opposition analyzes no actual contents of any of the TSB reports or any of the cases it cites. *See* D.I. 111 at 13–14 (citing *Petro v. FCA US LLC*, 2024 WL 3848433 (D. Del. Aug. 16, 2024), *Pistorio v. FCA US LLC*, 2022 WL 141524 (E.D. Mich. Jan 14. 2022), *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020) & *Talley v. Gen. Motors, LLC*, 2021 WL 7209448 (D. Del. Nov. 26, 2021). Regardless, Defendant's citations do not offer the support Defendant states.

   In the recent District of Delaware *Petro* case (decided while this case was pending interlocutory review), the same defendant, FCA, argued that the class plaintiff "failed to plead that FCA had pre-sale knowledge of the Defect[.]" *Petro*, 2024 WL 3848433, at *4. The plaintiff responded that "FCA's pre-sale knowledge can be inferred from Plaintiffs' allegations that FCA: (1) issued a STAR Case Report . . . ; (2) received complaints that consumers submitted to the National Highway Transportation Safety Administration ("NHTSA") regarding the Defect . . . ; and (3) conducted internal testing both pre-release and in response to consumer complaints." *Id.* Similarly, in the instant case, Plaintiffs pleaded that FCA received STAR case reports. D.I. 59 at ¶¶ 281–283. Plaintiffs also pleaded that FCA received consumer complaints. D.I. 59 at ¶¶ 293–313. And Plaintiffs also asserted the same facts regarding FCAs internal testing in this case. *E.g.*, D.I. 59 at ¶¶ 36, 257, 269, 270, 276–79, 292, 308. Thus, plaintiff in *Petro* alleged the same presale knowledge alleged here. *Petro*, 2024 WL 3848433, at *4. Indeed, Plaintiffs in this case alleged substantial additional sources of presale knowledge. D.I. 59 at ¶¶ 26–38, 242–306. And this Court in *Petro* directly rejected an identical argument made by FCA, that the TSB reports were not similarly related enough to the defect claims at issue to allow a pleading of pre-sale knowledge. *Petro*, 2024 WL 3848433, at *6 ("FCA contends that the NHTSA complaints do not impute pre-

9

sale knowledge onto FCA because . . . the symptoms are too distinct from what Plaintiffs experienced.")

The *Talley* case, decided by Third Circuit Court Judge Bibas, is similarly and directly on point and favors Plaintiffs, not Defendant. There, GM argued that the allegations in the complaint did not establish pre-sale knowledge of the defect because none of the pleading allegations were sufficiently direct. *Talley*, 2021 WL 7209448, at *3. Judge Bibas disagreed, explaining that "the drivers need not *establish* that GM knew about the starter defect. Instead, they need only *plausibly plead* that—and they do." *Talley*, 2021 WL 7209448, at *3. There, like here, the allegations of pre-sale knowledge were based on "preproduction tests," "complaints . . . which GM . . . monitors," "dealership reports," and market "demand for replacement parts related to the [] defect[.]" *Id.* at *3. Here, Plaintiffs similarly alleged Defendant's knowledge based on "pre-production testing," "complaints," dealership interactions, and aftermarket parts reports. *E.g.*, D.I. 59 at ¶¶ 86, 305, 306.

In *Pistorio*, another case involving FCA, the court explained that: "Courts in this district have analyzed what is necessary for a plaintiff to have alleged presale knowledge of an auto defect many times." *Pistorio*, 2022 WL 141524, at *11 (collecting cases). There, the court directly found that FCA's experience with a similar design defect in a predecessor design, combined with consumer complaints and internal testing, was sufficient to plead pre-sale knowledge. *Id.* at *11. Here, similarly, Plaintiffs alleged similar defects in a predecessor design, consumer complaints, and internal testing, in addition to other sources of pre-sale knowledge. *E.g.*, D.I. 59 at ¶¶ 260–270, 257.

In *Francis*, GM argued that a plaintiff had inadequately pleaded pre-sale knowledge and thus the suit should be dismissed on a 12(b)(6) motion. *Francis*, 504 F. Supp. 3d at 685. There, the court held that allegations regarding GM's "engineering experience with the [relevant] model . . . [and] internal testing" were sufficient to support allegations of pre-sale knowledge at the pleadings stage. *Francis*, 504 F. Supp. 3d at 685. Here, Plaintiffs alleged similarly that FCA conducts internal testing that would familiarize it with the defect: "FCA puts vehicles with the SRT badge through

10

the SRT Duty Cycle, including simulated road course on dynameters and on the drag strip which pushes the engine to peak torque and peak power and tests different types of driveline loads. Such testing revealed to FCA that the rear differentials in Class Vehicles was insufficient to carry the torque and power of the engines in Class Vehicles." D.I. 59 at ¶ 69 (citation omitted).

In short, while Defendant's opposition conducts essentially no legal analysis and ignores the relevant pleading, instead relying only on copy-pasted statements from this Court's Order, none of the cases Defendant cites regarding automotive defects supports its position. Rather, as previously argued, a substantial difference of opinion exists on the issue of pre-sale knowledge pleading in fraudulent defect cases.

### III. DEFENDANT'S ASSERTION THAT APPEAL WILL NOT SPEED RESOLUTION OF THIS CASE REQUIRES FANCIFUL INFERENCES.

Defendant's third argument, that an interlocutory appeal would not make this case easier to resolve, is extremely unrealistic. D.I. 111 at 14–15. Defendant primarily argues that because it is destined to prevail on this appeal, an interlocutory appeal would not speed the resolution of this case. D.I. 111 at 15 ("because Plaintiffs' implied warranty claims remain, even affirming the dismissal of Plaintiffs' fraud-based omission claim would not obviate the need for a trial."). This is wishful thinking; no appellate result is predetermined.

Alternatively, Defendant argues that, even if the claims were reinstated after an interlocutory appeal, it would drive up pre-trial litigation costs. D.I. 111 at 15. However, Respondents make no mention of why those costs would not be the same or greater if the claims were reinstated post-trial and new/additional discovery and a new trial was required. D.I. 111 at 15. Moreover, as Plaintiffs previously mentioned, there is little chance that this case will settle while the status of Plaintiffs' fraud claims, the primary driver of value in this case, remain unresolved. *See* D.I. 110 at 17–18; *Sterk*, 672 F.3d at 536 (noting that 1292(b) review is appropriate because "the completion of the litigation will take longer than if the [main] claim is out of the case, . . . with the [secondary] claim perhaps just a life jacket. Moreover, uncertainty about the status of

11

the [main] claim may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation.") Rather, interlocutory appeal in this case will likely speed this case to a resolution, or, alternatively, prevent the need to hold two separate trials in the same case. *See* Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3930 (3d ed. 2025) (the Court should be "pragmatic" in considering 1292(b) certification and consider the chance of promoting settlement).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify its ruling on Plaintiffs' fraud claims for immediate appeal.

Dated: July 9, 2025

Respectfully submitted,

/s/ Jason Z. Miller
Kelly A. Green (DE Bar No. 4095)
Jason Z. Miller (DE Bar 6310)
**SMITH, KATZENSTEIN & JENKINS, LLP**
1000 N. West Street, Suite 1501
Wilmington, Delaware 19801
Tel: (302) 504-1656
Fax: (302) 652-8405
kag@skjlaw.com
jzm@skjlaw.com

Russell D. Paul (DE Bar 4647)
**BERGER MONTAGUE PC**
800 N. West Street
Suite 200
Wilmington, DE 19801
Tel.: 302-691-9545
Email: rpaul@bm.net

Amey J. Park (*pro hac vice*)
Natalie Lesser (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000

Fax: (215) 875-4604
Email: apark@bm.net
       nlesser@bm.net

Steven Calamusa (*pro hac vice*)
Geoffrey Stahl (*pro hac vice*)
Rachel Bentley  (*pro hac vice*)
**GORDON & PARTNERS, P.A.**
4114 Northlake Blvd.,
Palm Beach Gardens, FL 33410
Telephone: (561) 799-5070
Facsimile: (561) 799-4050
scalamusa@fortheinjured.com
gstahl@fortheinjured.com
rbentley@fortheinjured.com

Cody R. Padgett (*pro hac vice*)
Abigail J. Gertner (pro hac vice)
Majdi Y. Hijazin (pro hac vice)
Nathan Kiyam (pro hac vice)
**CAPSTONE LAW APC**
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:	(310) 556-4811
Facsimile:	(310) 943-0396
Cody.Padgett@capstonelawyers.com
Abigail.Gertner@@capstonelawyers.com
Majdi.Hijazin@capstonelawyers.com
Nathan.Kiyam@capstonelawyers.com

*Attorneys for Plaintiffs and the Class*

13